**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| NINE LINE APPAREL, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-cv-997 |
| v. | ) | |
| | ) | **COMPLAINT** |
| JANAE SERGIO | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

COMES NOW Plaintiff Nine Line Apparel, Inc. and complains of Defendant Janae Sergio:

## I.    SUMMARY OF THE CASE

1.  While there is no doubt that military sexual trauma has affected many innocent women who do need advocacy, Defendant Janae Sergio has chosen to fashion herself as an advocate through exaggeration and fabrication, pursuing personal fame and fortune. This case arises from one such fabrication, where Defendant has chosen to hijack a tragedy, with which she was uninvolved and about which she relied upon willfully uninvestigated hearsay claims, to attack Plaintiff and all the good, hardworking people that Plaintiff employs, as well as to promote herself.

2.  Plaintiff Nine Line Apparel, Inc. (hereinafter "Nine Line") is a veteran founded, owned and operated company.  As a company, Nine Line gives back to the military and first responder communities that fought and died for our country.

3.  On July 12, 2022, the community was rocked by the shocking murder-suicide of two former employees of Plaintiff.  Both individuals were U.S. Army veterans and **former** employees of Nine Line, having worked together between 2018 and 2020, approximately

two years before their deaths.[1]  While there was an initial outpouring of support for Zach Scalf, who posted his suicide message on social media, this support quickly evaporated once it was discovered that, before killing himself, he had murdered Madalyn Coulter.

4.  Though wholly uninvolved with the incident and unacquainted with any of the participants, Defendant inexplicably chose to take advantage of this tragedy to begin promoting fabricated conspiracy theories about Plaintiff and the company's supposed complicity or cover-up of the crime.

5.  What makes Defendant's actions all the more egregious and harmful is that, unlike most faceless internet trolls pushing conspiracy theories, Defendant touts her position as a government official, Chief of Air Force Lodging, to buttress her credibility.  Moreover, she is pursuing personal profit through her unlawful activities by going to Plaintiff's direct competitors to defame Plaintiff and promote her false theories on their podcast, in pursuit of a sponsorship from that company.

6.  Defendant has made several egregious, knowingly false and defamatory statements in various public platforms, that Nine Line withheld information about the tragic death of a domestic violence victim, that it was unsympathetic to the victim's family, and even that it attempted to hide, complicate or confuse the truth surrounding the victim's death in order to protect her killer.   Defendant has been on a campaign to destroy Nine Line's reputation and thus its economic interests by making blatantly false, intentionally vindictive statements about the company, the company's management, the company's employees, and the integrity of the same.  She has made these claims with a

---

[1] [Madalyn Coulter, Zachary Scalf: 2 dead in apparent murder-suicide (savannahnow.com)](savannahnow.com) (last accessed on February 5, 2023).

reckless disregard for their truth or falsity, choosing to proceed with her chosen narrative regardless of its falsity.

7.   In addition to her public attacks, Ms. Sergio has also engaged in a pattern of unlawful conduct by targeting Nine Line employees directly.  For example, Defendant repeatedly used images of a Nine Line employee's post from her personal account, taking the post from its original context and using it to support Defendant's false version of events.  When the employee asked Defendant to stop and informed her that she was misusing the employee's words, Defendant flatly refused.  Defendant has reacted similarly to any Nine Line employee who attempts to bring the truth to Defendant's attention.

8.   Plaintiff brings this action to recover special damages, including punitive damages, and seeks a permanent injunction to prevent Defendant's ongoing repetition of these malicious lies.

## II.   <u>PARTIES AND JURISDICTION</u>

9.   Plaintiff Nine Line is a veteran-founded, owned, operated, and supported company since 2014 whose slogan is "Relentlessly Patriotic" and whose mission is to support veterans and their families as well as to increase employment opportunities in the United States. In the United States military, the term Nine Line is a distress call and often the difference between life and death. It symbolizes the trust our servicemen and women have for one another. Nine Line was started by Cpt. Tyler Merritt out of his garage and eventually became incorporated in Georgia, where it holds its principal place of business.

10. Defendant Janae Sergio is a Texas resident, self-proclaimed "social media influencer," self-promoted author, and Chief of Air Force Lodging.

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1), because both the Plaintiff and Defendant are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. Complete diversity exists amongst between the parties as the Defendant is a Texas resident, whereas the Plaintiff claims Georgia as the State of Incorporation.

13. Venue for this lawsuit is proper in the Western District of Texas, where the Defendant resides and committed the injurious actions, pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2); under the Restatement (Second) of Conflict of Laws, which the Fifth Circuit follows in matters of defamation, Georgia law applies as that is where the Plaintiff is domiciled and each statement was published there.

### III.      FACTUAL BACKGROUND

### Underlying Events

14. Zach Scalf and Madalyn Coulter were both Army veterans and former employees of Plaintiff.  Mr. Scalf worked as Manager and left on DATE to pursue other ventures in Texas.  Ms. Coulter worked as TITLE and left on DATE to work at Blue Force Gear, a tactical equipment manufacturer.

15. Although Plaintiff maintains a strict fraternization policy modeled after that used by the U.S. Army, Mr. Scalf and Ms. Coulter had engaged in a romantic relationship during their employment, unbeknownst to Plaintiff.

16. On July 12, 2022, at approximately 9:30 a.m., Mr. Scalf drove to the Plaintiff's facility and parked his truck.  He made a video which he posted to social media where he said:

> I just want to take a minute to say that I love each and every one of you and I'm very sorry.  If you know me, you know that I struggle with a lot of my own personal demons and sometimes we make

decisions that we just can't come back from and bounce back from. This sucks. Hopefully this reaches somebody who can be stronger than I am. But, that can... I love all of you. I am sorry for those that I hurt. I will um I will forever be thankful for all of you that have been in my life.

17. This video understandably caused several concerned friends to reach out, fearing that he might commit suicide. Shortly thereafter, at 11:35 a.m., his body was found at Plaintiff's facility. Based on the video he posted, everyone assumed that Mr. Scalf had committed suicide as a result of his Post-Traumatic Stress, which he referred to as his "personal demons."

18. Amid the outpouring of support and sorrow over Mr. Scalf's passing, Mr. Merritt met with Mr. Scalf's widow to try to offer the family support.

19. At 4:26 PM, two uniformed soldiers walked into Plaintiff's facility and asked the desk clerk where Madalyn Coulter was. As Ms. Coulter had not worked at Nine Line for over a year and the employee had been hired since her departure, she did not know who they were talking about.

 

20. The soldiers persisted and asked to speak with a manager. When another female employee joined them, the soldiers demanded to go into the changing room to speak.

They continued to ask for Madalyn Coulter, but the supervisor was similarly unable to help and felt uncomfortable, as the soldiers then requested to speak with her in the changing room.

21. It wasn't until after 5PM that Madalyn Coulter's body was discovered and the police informed Plaintiff of their discovery.  While it was still early in the investigation, police informed Plaintiff that their initial suspicion was that Mr. Scalf had murdered Ms. Coulter earlier that day.

22. Tyler Merritt took immediate steps to ensure that all messages of support or grief for Mr. Scalf were taken down.  This includes reaching out to other non-Nine Line employees, such as prominent members of the veteran community and informed them Mr Scalf was suspected of murdering Maddy prior to killing himself and that he should not be honored and suggested they remove any tributes posted until the police completed their investigation.

23. Mr. Merritt then spoke with leadership at Blue Force Gear to offer help and support.  A decision was made that Blue Force Gear would take sole responsibility to fundraising and caring for Ms. Coulter's family, as she was their employee.

**Defendant Targets Nine Line**

24. Defendant engaged in an unlawful and dishonest pattern of conduct to falsely and publicly malign a successful company in an intentional and malicious effort to increase her own popularity as a social media influencer, as well as to increase her revenue as the author of her memoir published in 2022.

25. For sensationalism and self-promotion purposes, Defendant took a tragic news story on two individuals, neither of whom she knew or had ever interacted with, then

embellished upon this story to exploit it for personal gain, while unlawfully disparaging Nine Line on multiple social media platforms.

26.    On July 22, 2022, Defendant posted a video via TikTok[2] purporting to provide inside details about the events leading to the discovery of Ms. Coulter's body, despite having no previous contact with Nine Line or either of the deceased. In this video, Defendant noted that both Ms. Coulter and Mr. Scalf had left Nine Line and were no longer employees of Plaintiff. However, Defendant then went on to claim that Ms. Coulter's brother and fiancé were scolded by a Nine Line manager and sent away; this was a blatant falsehood.

27. Defendant further falsely asserted that Nine Line was intentionally hiding information or attempting to conceal the tragic death of Ms. Coulter in favor of Mr. Scalf, based on an unattributed comment on Facebook about "not spread(ing) rumors," which Defendant asserted meant that something was being covered up because that is what this "typically means."

28. On July 23, 2022, Defendant posted another video via TikTok regarding the tragic deaths. The second video purported to update followers on information regarding Nine Line's response to Ms. Coulter's death at the alleged behest of Ms. Coulter's fiancé. Specifically, Defendant stated that, "after learning that Mr. Scalf took his own life in the Nine Line parking lot, Ms. Coulter's family pleaded with Nine Line for information on Ms. Coulter's whereabouts, and Nine Line refused to help them...at one point, actually took them into an office...scolded her fiancé and sent them on their way." Once again, the statement in the July 23rd TikTok video was untrue.

---

[2] R.I.P. Madalyn Coulter. Facts are Facts and Nine line apparel is trash... | TikTok (last accessed on February 5, 2023).  TikTok began as a music and lip-sync social media platform, but has expanded to other forms of content and now has a wide reach.

29. Defendant posted a second TikTok on July 23, 2022,[3] once again framed as an "update" and purporting to have inside information.  Defendant claimed that Ms. Coulter's fiancé and brother "pleaded and begged" Nine Line for help in finding Ms. Coulter, and repeated her statement that the company "refused" to help and "scolded" the family.  Defendant went on to say that the Nine Line organization was aware of everything that had taken place and that they were intentionally "withholding" information and keeping the death of Ms. Coulter a "secret" so that they could publicize the death of Mr. Scalf.  Each and every one of these allegations is entirely false, and Defendant's "tagging"[4] of Nine Line was clearly intended to ensure that Nine Line followers easily found the video and its false and defamatory claims.

30. Also on July 23, 2022, Defendant posted a video on YouTube, whereby she dramatically and frantically relayed detailed information about this murder-suicide, then accused Nine Line of "refusing to help…and allowing the veteran community to mourn and praise Mr. Scalf, knowing what happened…and in essence, hiding the death of Ms. Coulter."[5]  The false statement that Nine Line's response to the deaths of two former employees was intended to conceal facts from the veteran community, Nine Line's primary customer base, and was intended to cause financial and reputational harm to Nine Line while simultaneously increasing Defendant's social media popularity and reach.

---

[3] [Replying to @kellyym   this info is directly from the two people who fo… | TikTok](#) (last accessed May 8, 2023).
[4] On TikTok, as with most social media platforms, using an individual or organization's "tag" provides a simplified search and notification function allowing for material to reach the "tagged" entity's audience easily.
[5] [S2E13: UPDATE-Let's talk…Bringing to light the murder of Veteran Madalyn Coulter - YouTube](#) (last accessed on February 5, 2023).

31. Over the course of the video, the screen includes an image of a message from what can only be one of Defendant's TikTok followers stating, "also Nine Line told their employees not to answer anyone with questions and to say 'no comment'." While not directly attributable to Defendant, this comment demonstrates the impact of Defendant's false version of events upon the viewing public of Nine Line customers.  Defendant used this image on her second July 23, 2022, TikTok as well.

32. On July 24, 2022, Defendant posted another TikTok video,[6] claiming to know the entire true story and presenting herself as giving a full "recap" of everything that had happened.  Defendant represented herself as a sort of investigator who began looking into the tragedy because she happened to see a post about not starting rumors; Defendant asserted that this comment meant there was a "cover up."  What Defendant did not say was that her investigation began and ended with those same rumors, as Defendant herself affirmatively refused to investigate further and to determine the truth or accuracy of the vicious claims that she was repeating on social media outlets.

33. During the July 24, 2022, TikTok, Defendant repeated her claim that Ms. Coulter's fiancé and brother sought help from Nine Line employees and that they were refused, "scolded" and sent away.  Defendant went on to sensationalize further an already sensational story, claiming that Ms. Coulter died in her brother and fiancé's arms.  Defendant continued to berate Nine Line for their purported refusal to help or support Ms. Coulter's family.  Once again, each of the above statements was entirely false and had the twin aim of damaging Nine Line's reputation while aggrandizing Defendant.

---

[6] Replying to @kellyym_ did the best I could to recap the story and hon... | TikTok (last accessed May 8, 2023).

34. The following day, July 25, 2022, Defendant changed her tactics from posting direct falsehoods and uninvestigated "facts" on TikTok; instead, she posted a TikTok[7] featuring screenshots of a Nine Line employee's personal comments, taken out of context, and played to a background of music – a song titled "They Don't Care About Us."  The post was intended to further Defendant's false narrative that Nine Line didn't care about female veterans or domestic violence victims.  Defendant put this post up after receiving and refusing a direct request from the employee in question to stop using her comments in posts and notifying Defendant both that Nine Line did not have the knowledge of Ms. Coulter's death that Defendant was claiming and that Nine Line had no connection to the tragedy other than the actual participants having previously worked there.

35. On July 26, 2022, Defendant returned to the TikTok platform,[8] in which she referred to "silencing tactics," and stated that because Nine Line was "breeding this type of behavior [referring to domestic violence] right there in their workplace," the company had a "role to play" and had been "trying to erase her memory," in reference to Ms. Coulter.  Each of these comments, of course, is utterly false and aimed solely at disparaging Plaintiff while equally falsely portraying Defendant as a brave defender of women's rights.

36. Nine Line has refrained from engaging in public discourse on a matter that should be left solely to the families. Any assertion that Nine Line has done anything other than respect the privacy of these families is a thoroughly untrue and disparaging accusation that only serves to cause financial harm to Plaintiff.

---

[7] Replying to @sprkljeepbabe #nineline senior graphic designer touted h... | TikTok (last accessed May 8, 2022).

[8] Replying to @haze_gray I actually risked isolating myself from many Ve... | TikTok (last accessed May 8, 2023); the post "tags" Nine Line apparel to ensure that it is seen by anyone searching or following that "tag."

37. Defendant's lies that Nine Line was somehow complicit in or attempted to cover-up the murder-suicide and subsequent investigation did, in fact, result in extensive loss to Nine Line's business, as evidenced by a selection from the comments attached to the social media postings themselves:

> *I won't support them anymore. There no excuses.*
> *I will never buy Nine Line again.*
> *Flood that companies Instagram.*

38. Clearly, loyal customers and anticipated future customers began boycotting Nine Line as a result of Defendant's false statements. The loss of anticipated business and negative impact on Nine Line's customer base is a direct and clear consequence of the maliciously fabricated and perpetuated messages put forth by Defendant on the multitude of social media platforms.

39. Perhaps most interesting and notable are the Defendant's efforts to claim non-economic motivations for creating a smear campaign. Her comment in her own post states "To my male counterparts, don't turn a blind eye to abuse/exploitation of our female Veterans in order to preserve the 'brotherhood'. The signs were there. We scream from mountaintops and remain unheard, y'all whisper and the community stops to listen. -janae_perfectlyflawed"

40. Defendant repeated and amplified her own misconduct by taking images from the TikToks and posting them on other social media platforms, including Instagram and Twitter. Defendant did this to ensure that her false narrative reached the broadest possible audience.

41. Upon information and belief, none of the Defendant's assertions are correct, truthful, or accurate. On the contrary, these egregious allegations are a thinly veiled attempt to exploit the very serious crimes of domestic violence and partner exploitation

– real crimes with real victims – by smearing the reputation of a veteran owned and operated company that simply did not have any part in the tragic murder-suicide of two of its former employees in order to boost Defendant's own social media visibility for personal and financial gain.

42. As of the date of this Complaint, Defendant's postings and podcast interviews remain publicly available on various social media platforms, to include TikTok, Twitter, Instagram and YouTube; each of these platforms has international reach.

<strong>Defendant Continues to Target Nine Line</strong>

43. On October 28, 2022, approximately three months after the slew of social media videos against Nine Line, Defendant appeared on The American Grit Podcast. The Defendant again found a public platform to disparage this company that had nothing to do with the July 12, 2022, murder-suicide for self-promotion purposes. In this nearly 58 minute podcast, in which she was invited to promote her new autobiography, Defendant began with telling her life story of victimization at the hands of her mother, her mother's lovers, her co-workers and society, then spun this history into an attempt to justify her qualifications as an expert in Ms. Coulter's case, a woman she never met.

44. Thirty-five minutes into the podcast, Defendant attempted to explain the circumstances surrounding the two tragic deaths of these individuals whom she had never met, stating that she investigated the tragedy after viewing a comment of someone stating, "I don't want to spread rumors," and further stating that the comment meant something was being covered up by Nine Line.

45. Defendant proceeded to make the following false claims about the incident itself and, in doing so, created vicious, salacious lies about Nine Line:

> ...[Zach Scalf] used kind of the workplace phone log to get her phone number and actually reach out to her and try to get with her while she was married....

This statement was false and intended to mislead her viewers into believing that Nine Line had some involvement in or responsibility for the tragedy that eventually took place.

46. Defendant went on to state that:

> ...they ended up had an affair, and it became known in the company, and the company was like, look, just keep it out of here, we....we don't want anyone to know what's going on...this is what I'm being told by the way...

This statement was false and intended to mislead her viewers into believing that Nine Line had some involvement in or responsibility for the tragedy that eventually took place.

47. Defendant next implied the involvement or knowledge of Nine Line personnel by falsely claiming that Scalf "... drives around Nine Line... I think looking for certain people's cars..."

48. Defendant continued making false and malicious statements regarding the crime and Nine Line's reaction to it.  She stated that:

> ...they found Zach in the parking lot of Nine Line...[her fiancé] rushed over to Nine Line. He asked them, we know what happened, he said everybody was kind of hush hush, they were a little like they didn't want to talk to him, um asking them what happened, he said that they escorted him to a dressing room, kind of scolded him a little bit and then sent him on his way to go look for her on his own. Um, he did tell them there, I know what happened to Zach, and he said when he said that, like it was like a ghost had like, they had seen a ghost, they all got kind of like scared...

> ...after all of this happened, within hours, the Nine Line staff and the Nine Line employees all knew what happened.

These false statements were calculated to injure Nine Line's business and to damage Nine Line's reputation in society at large and in the veteran community in particular.

49. Defendant concluded the podcast by making the following false allegations:

> ...and I started getting just bombarded with messages from employees, former employees, um, you know, trying to kind of expose the company, and was like, I need to make sure that I stick to the situation that happened here, and I don't go on a crusade against the company, or go on a crusade against any particular person...

Yet, going on a crusade against Nine Line is precisely what the Defendant did, garnering increased visibility and followers as she did so.

50. Defendant acknowledged that she knew that as soon as Nine Line realized that Mr. Scalf had murdered Ms. Coulter, they took down any reference to him being a victim of veteran suicide from their social media platforms.

51. In the October 28, 2022 podcast, Defendant claimed that she thought everyone was waiting to bring her name to light because they wanted to find a way to blame her, stating "women in the military...we always experience victim blaming when something happens to us." Not only did this false comment attempt to portray Nine Line as being involved in blaming female military victims, but it also served to connect Defendant in the public mind with Ms. Coulter, with whom she had no actual connection.

52. Defendant then stated that "while I'm here trying to share Madalyn's story, dealing with my own trauma...being strong for her family and for our community...I'm also being smeared by a male veteran in our community, trashing me." She then described herself as courageous for being the voice for all women in the military. This statement implied that the founder of Nine Line had a personal vendetta against her and that she was in the right for exposing it.  There was no foundation in fact for this statement or the implication.

53. Defendant claimed that she was "not trying to bash anybody or tear anybody down," but that is exactly what she was doing, not to a male co-worker or fellow veteran,

but to a company, a company comprised of individuals that served our country and that give back to those that are currently serving our country.

54. For the remainder of the podcast, Defendant promoted her new book for sale on Amazon and on her website, revealing her economic motive for sensationalizing the deaths of two former Nine Line employees.

55. As of the date of this Complaint, Defendant's postings and podcast interviews remain publicly available on various social media platforms, including The American Grit Podcast.

56. Upon information and belief, Defendant knew that Nine Line had no part in this crime or the investigation that followed. Defendant's words and actions were born out of malice and a gross disrespect for their truth or veracity. To the extent that Defendant was repeating the words of others, she did so with a reckless disregard for their truth or falsity. Defendant affirmatively refused to investigate or publicize anything that competed with her false narrative.  As a result, Defendant intentionally ignored the information that she received contradicting her narrative and continued to publish false claims.  This was and is a publicity stunt to garner followers and sales for her recently released book, at the very real expense of Nine Line's reputation and business.

57. Defendant's lies harmed Nine Line's trade, office or profession.

58. Nine Line demanded a retraction from Defendant, and Defendant refused to retract or even investigate her false claims.

## FIRST CAUSE OF ACTION

## Defamation

59. Plaintiff repeats and realleges the allegations contained above as if fully set forth herein.

60. Defendant willfully, intentionally and maliciously published false statements against Plaintiff Nine Line between July 2022 and October 2022 on multiple social media platforms and on multiple dates.

61. Defendant made these false statements negligently, with knowledge that they were false.

62. Defendant's statements were unprivileged communications to third parties.

63. Defendant's false statements made charges against Plaintiff Nine Line in reference to its trade, office or profession calculated to injure Nine Line therein.

64. Defendant's false, malicious communications played a substantial part in inducing members of Nine Line's loyal customer base to stop purchasing its product, thereby directly affecting its business and causing Nine Line to suffer pecuniary damages.

65. Defendant's conduct was so willful, wanton and malicious, punitive damages should be awarded in an amount to be determined by a trial by jury, but in no event less than $1 million.

## SECOND CAUSE OF ACTION

### Tortious Interference

66. Plaintiff repeats and realleges the allegations contained above as if fully set forth herein.

67. Defendant's improper actions or instances of wrongful conduct were done without privilege.

68. Defendant acted purposely and with malice with the intent to injure Nine Line.

69. Defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the

plaintiff, as evidenced by the comments of third parties on social media and other platforms.

70. Defendant's tortious conduct proximately caused damage to the plaintiff in an amount to be determined to a trial by a jury.

## IV. <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court enter an order as follows:

A. Finding that Defendant is liable for defamation against Nine Line;

B. Issuing a Permanent Injunction against Defendant prohibiting her from repeating any and all of the false and defamatory claims pleaded herein;

C. Awarding special damages in the amount to be determined at trial, but in no event less than $1 million, plus punitive damages;

D. Awarding costs and expenses incurred in connection with this action, including reasonable attorneys' fees; and

E. Granting such other legal and equitable relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

/s/ Timothy Parlatore

Timothy Parlatore, Esq.
New York Bar No. 4679429
Parlatore Law Group, LLP
*Counsel for the Plaintiff*
One World Trade Center, Suite 8500
New York, New York 10007
212-679-6312
timothy.parlatore@parlatorelawgroup.com