UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NINE LINE APPAREL, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | SA-23-CV-997-FB (HJB) |
| | § | |
| JANAE SERGIO, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Defendant's Motion for Summary Judgment, and In the Alternative, Motion to Dismiss Pursuant to FED. R. CIV. P. 41(b) (Docket Entry 40). Pretrial matters have been referred to the undersigned for consideration.  (Docket Entry 17.)  For the reasons set out below, I recommend that Defendant's motion (Docket Entry 40) be **GRANTED IN PART** and **DENIED AS MOOT IN PART**.

**I.      Jurisdiction.**

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).  (*See* Docket Entry 1, at 4.)  The undersigned is authorized to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1).

**II.     Background.**

Plaintiff Nine Line Apparel, Inc. is clothing company that is founded, owned, and operated by military veterans.  (Docket Entry 1, at 1.)  On July 12, 2022, Plaintiff's staff discovered the body of Zachary Scalf—a former employee of Plaintiff's—in a car parked outside of Plaintiff's store.  (Docket Entry 41-1, at 1–2.)  Scalf had died of a self-inflicted gunshot wound.  (*Id.* at 1.)

As a popular figure in the veteran community, Scalf's suicide prompted an immediate outpouring of support. (*Id.* at 2.)

Later on the day Scalf committed suicide, two soldiers entered Plaintiff's retail store looking for a woman named Madalyn Coulter, another former employee of Plaintiff's who had not worked there in 18 months. (Docket Entry 41-1, at 2.) The employee whom they first approached was unfamiliar with Coulter and unable to aid the soldiers in their search. (*Id.*) Dissatisfied with the employee's response, the soldiers became aggressive and demanded to speak with the store manager. (*Id.*) When the manager arrived, the soldiers demanded to speak to her privately in one of the changing rooms and she acquiesced. (*Id.*) The soldiers interrogated the manager but she was also unfamiliar with Coulter and could provide no information as to her whereabouts. (*Id.*) Because the soldiers were making the store's employees feel uncomfortable, the manager asked them to leave. (*Id.*) Later that evening, Plaintiff's staff learned that Coulter has also been found dead. (*Id.*)

An investigation into the deaths revealed that Scalf had shot Coulter with her own gun during an altercation. (Docket Entry 41-1, at 2.) Scalf then drove to Plaintiff's parking lot, recorded a suicide note on Instagram, and shot himself with Coulter's gun. (*Id.*) Upon learning that Scalf had killed Coulter, Plaintiff's immediately contacted individuals who had posted online tributes to Scalf and requested that the tributes be taken down. (*Id.* at 3.)

From July 22 to 26, 2022, Defendant posted a series of videos on TikTok and YouTube purporting to provide the inside scoop on what happened at Plaintiff's store earlier that month. (Docket Entry 41-1, at 3.) In the first video, Defendant asserted that Plaintiff's store manager scolded Coulter's brother and fiancé—*i.e.*, the two soldiers—and kicked them out of the store. (*Id.*) She also accused Plaintiff's staff of "intentionally hiding information" and "attempting to

conceal" Coulter's death.  (*Id.*)  In the second video, Defendant claimed that, upon learning of Scalf's suicide in Plaintiff's parking lot, "Coulter's family pleaded with [Plaintiff] for information on . . . [her] whereabouts," and that Plaintiff not only "refused to help them," but "actually took them into an office . . . scolded her fiancé and [then] sent them on their way."  (Docket Entry 41-1, at 4.)  Defendant claimed that Coulter's fiancé and brother "pleaded and begged" Plaintiff's staff for help, only to be "scolded" and rebuked.  (*Id.*)  Defendant then went further, claiming that Plaintiff's staff intentionally withheld information about Coulter's death so they could capitalize off the publicity surrounding Scalf's death.  (*Id.*)  In another video posted that day, Defendant accused Plaintiff of "refusing to help" and "allowing the veteran community to mourn and praise Mr. Scalf, [all while] knowing what happened . . . and in essence, hiding the death of Ms. Coulter." (*Id.*)  In subsequent videos, Defendant repeated her prior accusations, characterized Plaintiff's handling of the situation was a "cover up," and accused Plaintiff of using "silencing tactics" and having "a role to play" in Coulter's death by cultivating a workplace that breeds domestic violence. (Docket Entry 41-1, at 5.)  Defendant also accused Plaintiff of "trying to erase [Coulter's] memory."  (*Id.*)

Approximately three months later, on October 28, 2022, Defendant appeared on The American Grit, a podcast owned by Grunt Style, one of Plaintiff's industry competitors.  (Docket Entry 41-1, at 5.)  Defendant appeared on the podcast as a paid brand ambassador for Grunt Style. (*Id.* at 6.)  About half an hour into the podcast, Defendant stated that she investigated the murder-suicide.  (*Id.*)  She claimed that Scalf used Plaintiff's workplace records to get Coulter's phone number and then began having an affair with her.  (*Id.*)  She claimed that Plaintiff knew of the affair and told them to keep it away from the store and not to let anyone know about it.  (*Id.*)  As to the events of July 12, 2022, Defendant claimed that Coulter's fiancé rushed to Plaintiff's store

after learning that Scalf's body was discovered in the parking lot.  (*Id.*)  She claimed that Plaintiff's staff were "hush hush" and "didn't want to talk to him."  (*Id.*)  Defendant then claimed that Plaintiff's staff escorted Coulter's fiancé to a changing room where they "kind of scolded him a bit and then sent him on his way to go look for her on his own." (*Id.*)  Defendant further claimed that when Coulter's fiancé mentioned Scalf, Plaintiff's staff "got kind of like scared . . . like[] they had seen a ghost."  (*Id.*)  Finally, Defendant claimed that Plaintiff's employees learned about this interaction within hours and immediately "bombarded" Defendant with messages "trying to kind of expose the company."  (*Id.*)

Plaintiff filed suit on August 12, 2023, asserting claims for defamation, tortious interference with a  contract, and tortious interference with prospective business relations, based on Defendant's TikTok, YouTube, and podcast statements.  (Docket Entry 1, at 15–17.)  Defendant answered (Docket Entry 5) and this case proceeded through discovery.  Defendant now moves for summary judgment on all of Plaintiff's claims.  (Docket Entry 40.)  In the alternative, Defendant asks the Court to dismiss this case for want of prosecution pursuant to Federal Rule of Civil Procedure 41(b).  (*Id.*)  Plaintiff has responded (Docket Entry 41) and Defendant has filed a reply (Docket Entry 42.)

## III.    Summary Judgment Standard.

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Hayes v. Locke Supply Co.*, 724 F. Supp. 3d 609, 612 (E.D. Tex. 2024) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A disputed fact is material when it "might affect the outcome of the suit under the governing law." *Allen v. U.S. Postal Serv.*, 63 F.4th 292,

300 (5th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute about such a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Allen*, 63 F.4th at 300 (quoting *Anderson*, 477 U.S. at 248).  In assessing genuineness, the Court "must view the evidence through the prism of the substantive evidentiary burden, . . . . bear[ing] in mind the actual quantum and quality of proof necessary to support liability."  *Anderson*, 477 U.S. at 254.

 The moving party "always bears the initial responsibility of informing the . . . court of the basis for its motion and identifying the record evidence which it believes demonstrates the absence of a genuine issue of material fact."  *Martin v. Petty*, 699 F. Supp. 3d 547, 555 (S.D. Tex. 2023) (Rosenthal, J.) (quoting *Celotex*, 477 U.S. at 323 (internal quotation marks and brackets omitted)).  "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."  *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014) (quoting *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001)).  When the nonmovant bears the burden of proof at trial, as in this case, the moving party "may merely point to the absence of evidence and thereby shift to the nonmovant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial."  *Martin*, 699 F. Supp. 3d at 555 (quoting *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022)) (internal quotation marks and brackets omitted).

 If the movant meets its burden, "the nonmovant must come forward with specific facts showing a genuine factual issue for trial."  *Martin*, 699 F. Supp. 3d at 555 (quoting *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021)) (internal quotation marks and brackets omitted).  The nonmovant "must identify specific evidence in the record and articulate the precise manner in which that evidence aids supports his claim."  *Martin*, 699 F. Supp. 3d at 555 (quoting *Shah v. VHS*

*San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021)) (internal quotation marks and brackets omitted). The nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Martin*, 699 F. Supp. 3d at 555 (quoting *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021)) (internal quotation marks omitted).

When considering a motion for summary judgment, the Court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Instead, "facts that are subject to genuine dispute are viewed in the light most favorable to [the nonmovant]," *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 749–50 (5th Cir. 2023), and the Court "construe[s] all reasonable inferences in [the nonmovant's] favor," *Guzman v. Allstate Assur. Co.*, 18 F.4th 157, 160 (5th Cir. 2021). The Court will also "resolve factual controversies in favor of the nonmoving party," though such controversies exist only "when both parties have submitted evidence of contradictory facts." *Guillot*, 59 F.4th at 750 (quoting 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). The Court need only consider the parties' cited materials. FED. R. CIV. P. 56(c)(3); *see Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence.") (citation omitted).

## IV.    Discussion.

Defendant has moved for summary judgment on all of Plaintiff's claims. (Docket Entry 40, at 10–15.) Defendant argues that Plaintiff's claims are time-barred to the extent that they are based on any statements Defendant made in the July 2022 Tik-Tok and YouTube videos. (*Id.* at 10, 15 n.5.) As to the October 2022 podcast, Defendant seeks summary judgment on both Plaintiff's defamation claims and its tortious interference claims. As to the defamation claims,

6

Defendant argues that Plaintiff fails to present any genuine dispute that the statements were false, that Defendant intended to assert anything more than mere opinion, that the statements were made with actual malice, or that Plaintiff suffered any damages. (*Id.* at 10–13.) As to the tortious interference claims, Defendant argues that the record is devoid of evidence that she knew of any contracts or prospective contracts between Plaintiff and specific third parties, that she willfully and intentionally interfered with such contracts or prospective contracts, that she committed any independently tortious or wrongful act, or that Plaintiff suffered any damages. (*Id.* at 14–15.)

This Report and Recommendation first addresses the limitations argument regarding the claims arising from statements made in July 2022, then turns to the arguments regarding to the claims arising from the podcast statements made in October 2022.

### A. *Statute of Limitations.*

"In a diversity case such as this, in which the causes of action arise under Texas law, federal courts apply Texas statutes of limitation, along with any accompanying rules regarding accrual and tolling." *Berrios v. Cox*, No. EP-23-CV-63-KC, 2024 WL 89453, at *9 (W.D. Tex. Jan. 8, 2024). The statute of limitations for a defamation claim in Texas is "one year after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.002(a). Such a cause of action "accrues when the allegedly defamatory material is circulated or published." *Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1011 (S.D. Tex. 2018) (citing *Deaver v. Desai*, 483 S.W.3d 668, 674–75 (Tex. App.—Houston [14th Dist.] 2015, no pet.)). However, if a plaintiff timely and sufficiently requests that the defendant correct, clarify, or retract the allegedly defamatory statements, the limitations period is tolled by 30 days. TEX. CIV. PRAC. & REM. CODE §§ 73.055(a), (e), 73.056(a), 73.057(a).

The alleged instances of defamation in this case were statements made during TikTok and YouTube videos published on July 22–26, 2022, and statements made during the recording of a

podcast episode that was published on October 28, 2022. (Docket Entry 41-1, at 3–5.) Defendant argues that any defamation claims arising out of the TikTok and YouTube videos are barred by the one-year statute of limitations because Plaintiff did not file this lawsuit until August 12, 2023—more than one year later. (Docket Entry 40, at 10; *see* Docket Entry 1.)

In response, Plaintiff argues that it tolled the one-year limitations period by an additional 30 days by serving Defendant with a request for a retraction. (Docket Entry 41, at 11.) However, Plaintiff provides no evidence of any such request. Instead, it points to a sentence in its complaint which states, in full, that "[Plaintiff] demanded a retraction from Defendant and Defendant refused to retract or even investigate her false claims." (Docket Entry 1, at 15.)

"Mere allegations in the nonmovant's complaint are not evidence." *Scott v. Santos*, 700 F. Supp. 3d 548, 552 (W.D. Tex. 2023) (citing *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("[P]leadings are not summary judgment evidence.")). And "even verified allegations cannot defeat summary judgment if they are simply 'conclusory['] . . . 'unsubstantiated['] . . . or constitute 'only a scintilla of evidence.'" *Scott*, 700 F. Supp. 3d at 552 (quoting *Little v. Liquid Air Corp.*, 37 F.3d at 1075). Here, Plaintiff's entire response to Defendant's limitations-based argument rests on a single, conclusory, unsubstantiated allegation in its an unverified complaint. (*See* Docket Entry 41, at 11; Docket Entry 1, at 15.) Indeed, while Plaintiff produced a declaration from its CEO as evidence to support its response in opposition to summary judgment, that declaration makes no mention of any timely and sufficient requests by Plaintiff for Defendant to correct, clarify, or retract any of the statements made in the July 2022 TikTok and YouTube videos. (See generally Docket Entry 41-1.)

As a nonmovant, Plaintiff has not carried its burden to "go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories[,] and admissions on file,

8

designate specific facts showing that there is a genuine issue" as to whether it took the requisite steps to toll the one-year statute of limitations for its defamation claims which accrued in July 2022. *See Morgan v. Fed. Exp. Corp.*, 114 F. Supp. 3d 434, 440 (S.D. Tex. 2015) (quoting *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001)). According, summary judgment should be granted as to those claims on the grounds that they are time-barred.

The same goes for Plaintiff's tortious interference claims arising out of Defendant's statements in the July 2022 TikTok and YouTube videos. Although "[a] two-year statute of limitations typically applies" to such claims, the one-year defamation limitations period applies "when allegedly defamatory statements form the sole basis for a plaintiff's tortious interference claim[s]." *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 146–47 (5th Cir. 2007) (citing TEX. CIV. PRAC & REM. CODE § 16.003 and *Martinez v. Hardy*, 864 S.W.2d 767, 776 (Tex. App.—Houston [14th Dist.] 1993, no writ)); *see Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 370 (Tex. 2014) ("[W]hen the sole basis for a tortious interference claim is defamatory statements, the one-year statute of limitations for defamation applies."). Because Plaintiff's tortious interference claims are premised on its former and prospective customers' exposure to Defendant's allegedly defamatory statements, summary judgment should be granted as to those of Plaintiff's tortious interference claims that are based on statements made in the July 2022 videos.

## B. *Defamation.*

The elements of a defamation claim are "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015) (citations omitted). Defendant contends that summary judgment is appropriate because Plaintiff has produced no evidence as to falsity, fault, or damages. (Docket Entry 40, at 10, 12–13.) Defendant

also argues that, viewed in context, the podcast statements were non-actionable opinions and, as such, were not defamation as a matter of law. (*Id.* at 11.) Because summary judgment is warranted on the ground that Plaintiff failed to produce sufficient evidence to create a genuine dispute whether Defendant was at fault—in this context, whether Defendant made her statements with actual malice—this Report and Recommendation addresses only that issue below.

The requisite degree of fault a plaintiff must prove is determined by their status, for defamation purposes: a private individual need only prove negligence, whereas a public figure or official must prove actual malice. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Defendant contends that the actual malice requirement is applicable here, because Plaintiff is a "limited-purpose public figure." (Docket Entry 40, at 12.) A plaintiff is a limited-purpose public figure if:

(1) the controversy at issue . . . [is] public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution;

(2) the plaintiff . . . ha[s] more than a trivial or tangential role in the controversy; and

(3) the alleged defamation . . . [is] germane to the plaintiff's participation in the controversy.

*McLemore*, 978 S.W.2d at 571 (quoting *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433 (5th Cir. 1987)).

Here, Defendant argues that Plaintiff is a limited-purpose public figure because her "allegedly defamatory statements relate to Plaintiff's reaction to a public controversy in which Plaintiff was directly involved." (Docket Entry 40, at 12.) Plaintiff apparently agrees—it foregoes any argument that a lesser degree of fault would suffice, and instead argues that Defendant in fact acted with actual malice. (Docket Entry 41, at 12.)

As a limited-purpose public figure, Plaintiff ultimately would be required to prove Defendant's actual malice "by clear and convincing evidence." *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 574 (Tex. App.—Austin 2007, pet. denied) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974); *McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)).  Evidence is clear and convincing "if it supports a firm conviction on behalf of the trier of fact that the fact to be proved is true." *Tex. Disposal Sys Landfill*, 219 S.W.3d at 575 (citing *Bentley*, 94 S.W.3d at 596–97).  In the summary judgment posture, this means that judgment should be granted when the nonmovant's evidence "is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence." *Anderson*, 477 U.S. at 254.

"Actual malice [means] knowledge of, or reckless disregard for, the falsity of a statement." *Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002).  Whether a defendant's statements were made with actual malice "can—indeed, must usually—be proved by circumstantial evidence."  *Id*. at 596.  "A lack of care or an injurious motive in making a statement is not alone proof of actual malice, but care and motive are factors to be considered."  *Id.*  "An understandable misinterpretation of ambiguous facts does not show actual malice, but inherently improbable assertions and statements made on information that is obviously dubious may show actual malice."  *Id.*  Furthermore, "failure to investigate fully is not evidence of actual malice," although "a purposeful avoidance of the truth is."  *Id.*

Defendant contends that "there is no evidence in the record" that she made her podcast statements with actual malice.  (Docket Entry 50, at 12–13.)  Plaintiff counters that Defendant must have made her podcast statements with actual malice "because it would have been impossible for [Plaintiff] . . . to know that Ms. Coulter had been shot before her body was found."  (Docket Entry 41, at 12.)  Furthermore, Plaintiff argues that Defendant had motive to speak falsely because

11

she made the statements as "a paid employee of a direct competitor, while on that direct competitor's podcast." (*Id.*) According to Plaintiff, "the evidence is clear," although she cites no evidence to support these arguments. (*Id.*) However, as the declaration of Plaintiff's CEO, Tyler Merritt, is the only evidence Plaintiff has produced in opposition to summary judgment, the undersigned assumes that the declaration is the evidence to which Plaintiff refers. (*See* Docket Entry 41-1.)

According to Merritt, at 4:26 P.M. on July 12, 2022, the day Scalf's body was found, two soldiers entered Plaintiff's retail store looking for Coulter, becoming aggressive with Plaintiff's staff when they were unable to help locate her. (Docket Entry 41-1, at 2.) Sometime after 5:00 P.M., Plaintiff's staff learned that Coulter's body had also been found, and that she had been shot. (*Id.*) Merrit further declares that, on October 28, 2022, Defendant appeared on The American Grit podcast, which is owned by Grunt Style, a direct competitor with whom Plaintiff has a contentious history. (*Id.* at 5.) According to Meritt, Defendant was a paid brand ambassador for Grunt Style when she appeared on the podcast and made the allegedly defamatory statements. (*Id.* at 7.)

Apparently based on this evidence, Plaintiff argues that Defendant must have known or recklessly disregarded the falsity of her statements when she suggested that Plaintiff's staff already knew what happened to Coulter when the soldiers arrived at 4:26 P.M. According to Plaintiff, such knowledge was impossible because the staff did not learn about the discovery of Coulter's body until after 5:00 P.M. that day. (Docket Entry 41, at 12.) Defendant disputes the falsity of any statement on this issue in the October podcast (Docket Entry 40, at 10; Docket Entry 42, at 2); however, even accepting Merritt's testimony that the staff did not learn about the discovery of Coulter's body until after 5:00 P.M.—and thus that Defendant's contrary suggestion was false—it does not follow that Defendant *knew* or *recklessly disregarded* the suggestion's falsity. As noted

above, falsity and fault are two separate elements that must be proven in a defamation case. *In re Lipsky*, 460 S.W.3d at 593. In this regard, Merritt's testimony that Defendant was a paid brand ambassador for a contentious competitor provides relevant circumstantial evidence, but is not of sufficient quantum and quality as would "support[] a firm conviction on behalf of the trier of fact." *Tex. Disposal Sys Landfill*, 219 S.W.3d at 575; *see Anderson*, 477 U.S. at 254.

For the foregoing reasons, Plaintiff has not produced evidence from which a reasonable jury could find by clear and convincing evidence that Defendant made her statements with actual malice. Absent a genuine dispute as to this necessary element of Plaintiff's defamation claim, Defendant is entitled to summary judgment.

### C.  *Tortious Interference with a Contract.*

To establish a claim for tortious interference with a contract, "a plaintiff must establish: (1) the existence of a valid contract; . . . (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss." *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017). Defendant contends, among other things, that the record is devoid of any evidence from which a reasonable jury could infer that Defendant willfully and intentionally interfered with an existing contract. (*See* Docket Entry 40, at 14.)

"To show a willful and intentional act of interference, a plaintiff must produce some evidence that the defendant . . . knowingly induced one of the contracting parties to breach its obligations under a contract." *Hart v. Manriquez Holdings, LLC*, 661 S.W.3d 432, 439 (Tex. App.—Houston [14th Dist.] 2023, no pet.) To do that, a plaintiff must produce evidence from which a reasonable jury could infer "that the interfering party (1) had actual knowledge of the existence of a contract between the plaintiff and a third party, or (2) had knowledge of facts and

13

circumstances that would lead a reasonable person to conclude that a contract existed." *Id.* The key is therefore whether a defendant had knowledge of "a specific contract" or knowledge of facts that would lead a reasonable person to conclude that a specific contract existed. *Id.* at 442. Evidence that a defendant likely would have "susp[ected]" the existence of contracts with "unidentified third parties" is insufficient. *Id.*

As noted above, the only evidence Plaintiff has produced to oppose Defendant's motion for summary judgment is Merritt's declaration. (Docket Entry 41-1.) Nowhere in that declaration is there any evidence from which a reasonable jury could infer that Defendant actually knew of the existence of a specific contract between Plaintiff and an identifiable third party. Nor does it contain any evidence of facts and circumstances from which a jury could infer that Defendant— or any reasonable person in her shoes—would have concluded that a specific contract existed between Plaintiff and an identifiable third party. At most, the declaration offers some evidence that Defendant spoke on the podcast as "a paid brand ambassador of Grunt style," a company whom Merritt avers has "persistently tried to compete" with Plaintiff and has "stolen [Plaintiff's] intellectual property" in the past. (*Id.* at 5–7.) But the most that could be inferred from these statements is that Defendant was likely aware that Plaintiff *generally* had contracts with various unidentified third parties. General, as opposed to specific knowledge, is not sufficient to support the willful and intentional interference element of a claim for tortious interference with a contract. *See Hart*, 661 S.W.3d at 442. Accordingly, Defendant is entitled to summary judgment on that claim.

**D.  *Tortious Interference with Prospective Business Relations.***

"Texas law protects prospective contracts and business relations from tortious interference." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

To survive a motion for summary judgment on such a claim, a plaintiff must produce evidence from which a reasonable jury could infer "that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Id.*

Defendant argues that the record is devoid of evidence to support the first and third elements above. (Docket Entry 40, at 15.) The Court need consider only the third element, which "requires a finding that the defendant engaged in independently tortious or unlawful conduct." *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421 (Tex. 2017). "Independently tortious" means "conduct that would violate some other recognized tort duty." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001). The independent tort at issue in this case is defamation. However, as explained *supra*, Plaintiff has not produced evidence from which a reasonable jury could find in its favor on defamation. Accordingly, because Plaintiff has not produced sufficient evidence upon which a reasonably jury could conclude that Defendant's statements were defamatory, it cannot satisfy the third element of its claim for tortious interference with prospective business relations. *See, e.g.*, *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 383 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("Because the trial court properly granted summary judgment on . . . defamation claims, and because . . . tortious interference claim [wa]s based on the alleged tort of defamation, the trial court also properly granted summary judgment on . . . tortious interference claim."); *cf. Day v. Fed'n of State Med. Boards of the U.S., Inc.*, 579 S.W.3d 810, 824 (Tex. App.—San Antonio 2019, pet. denied) (affirming dismissal because plaintiff's "fail[ure] . . .

to establish . . . defamation claim" was a "fail[ure] to satisfy his burden to establish . . . that the [defendant's] conduct was independently tortious or wrongful"); *C & K Trucking LLC v. Ardent Mills LLC*, No. 3:20-CV-1104-K, 2021 WL 211547, at *8 (N.D. Tex. Jan. 20, 2021) (holding that "fail[ure] to state an actionable defamation claim" was a "fail[ure] to state an actionable, underlying tort to satisfy . . . claim for tortious interference with prospective business relations"). Summary judgment is therefore appropriate on this claim.

## V.    Conclusion and Recommendation.

For the reasons discussed above, I recommend that Defendant's Motion for Summary Judgment, and In the Alternative, Motion to Dismiss Pursuant to Fed. R. Civ. P. 41(b) (Docket Entry 40) be **GRANTED IN PART** and **DENIED AS MOOT IN PART**.  Specifically, I recommend the Court grant summary judgment for Defendant on all of Plaintiff's claims. Consequently, I further recommend that Defendant's request in the alternative for dismissal under Rule 41(b) be denied as moot.

## VI.    Notice of Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Report and Recommendation must be filed **within 14 days** after being served with a copy of the same, unless this time period is modified by the District Court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties.  An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections;

16

"objections that are frivolous, conclusory, or general in nature needn't be considered." *Williams v. Lakeview Loan Serv. LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on July 24, 2025.

_____
Henry J. Bemporad
United States Magistrate Judge